**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| SYLENA RILEY, Individually and For Others Similarly Situated | **Case No. 2:25-cv-1564** |
| v. | Jury Trial Demanded |
| SUGAR CREEK REST, INC. d/b/a QUALITY LIFE SERVICES | FLSA Collective Action<br>Rule 23 Class Action |

# CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Sylena Riley (Riley) brings this class and collective action to recover unpaid wages and other damages from Sugar Creek Rest, Inc. d/b/a Quality Life Services (QLS).

2. QLS employed Riley as one of its Hourly Employees (defined below) in Pennsylvania.

3. QLS pays Riley and the other Hourly Employees by the hour.

4. Riley and the other Hourly Employees regularly work more than 40 hours in a workweek.

5. But QLS does not pay Riley and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

6. Instead, QLS pays Riley and the other Hourly Employees shift differentials and other non-discretionary bonuses that it excludes from their regular rates of pay for overtime purposes (QLS's "shift differential pay scheme").

7. Additionally, QLS automatically deducts 30 minutes a day, from Riley's and the other Hourly Employees' time, for so-called "meal breaks" (QLS's "auto-deduction policy").

8. But QLS regularly fails to provide or make available *bona fide* 30-minute meal breaks to Riley and the other Hourly Employees.

9. Rather, QLS requires them to remain on duty throughout their shifts and subjects them to interruptions during their unpaid, off the clock "meal breaks."

10. Riley and the other Hourly Employees are thus not paid for all hours worked.

11. Finally, QLS requires the Hourly Employees to clock in and out for their shifts via its timekeeping system, but QLS automatically rounds their clock in and clock out punches to the nearest quarter hour for its own primary benefit (QLS's "rounding policy").

12. QLS's auto-deduction policy, rounding policy, and shift differential pay scheme violate the Fair Labor Standards Act (FLSA) and Pennsylvania Minimum Wage Act (PMWA) because these policies deprive Riley and the other Hourly Employees of premium overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

13. Additionally, QLS's meal deduction policy, rounding policy, and shift differential pay scheme violate the Pennsylvania Wage Payment and Collection Law (WPCL) by depriving Riley and the other Hourly Employees of earned wages, including overtime wages, on their regular paydays and/or following the termination of their employment.

## JURISDICTION & VENUE

14. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

16. This Court has general personal jurisdiction over QLS because QLS is a domestic corporation.

17. Venue is proper because QLS maintains its principal place of business in Butler, Pennsylvania, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

18. Riley worked for QLS as a Certified Nursing Assistant (CNA) from approximately July 2018 until August 2025.

19. Throughout her employment, QLS classified Riley as non-exempt and paid her by the hour.

20. QLS subjected Riley to its shift differential policy, rounding policy, and auto-deduction policy.

21. Riley's written consent is attached as **Exhibit 1**.

22. Riley brings this class and collective action on behalf of herself and other similarly situated QLS employees.

23. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees QLS paid under its shift differential pay scheme, rounding policy, and/or who worked under its auto-deduction policy at any time during the past 3 years through final resolution of this action (the "FLSA Collective Members").**

24. Riley also seeks to represent a Pennsylvania class under FED. R. CIV. P. 23 defined as:

> **All hourly QLS employees who worked in, or were based out of, Pennsylvania who QLS paid under its shift differential pay scheme, rounding policy, and/or who worked under its auto-deduction policy during the past 3 years through final resolution of this action (the "Pennsylvania Class Members").**

25. The FLSA Collective Members and Pennsylvania Class Members are collectively referred to as the "Hourly Employees."

26. QLS is a Pennsylvania corporation that maintains its headquarters in Butler, Pennsylvania.

27. QLS may be served with process by serving an agent, employee, or officer at its registered office address: **612 North Main Street, Butler, Pennsylvania 16001**.

## COVERAGE UNDER THE FLSA

28. At all relevant times, QLS was an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

29. At all relevant times, QLS was an enterprise within the meaning of the FLSA. 29 U.S.C. § 203(r).

30. At all relevant times, QLS was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as computers, cellphones, personal protective equipment, etc., that have been moved in or produced for commerce.

31. At all relevant times, QLS had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

32. At all relevant times, QLS employed Riley and the other Hourly Employees as "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

33. At all relevant times, Riley and the Other Hourly Employees have been engaged in commerce or in the production of goods for commerce, or otherwise handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as medical tools, personal protective equipment, computers, and cell phones.

## FACTS

34. QLS operates a home healthcare facility, a hospice facility, as well as "ten skilled nursing facilities [] offer[ing] a variety of care and specialty services."[1]

35. QLS touts the employee benefits it provides across its facilities.[2]

---

[1] https://www.qualitylifeservices.com/all-locations (last visited October 7, 2025).
[2] https://www.qls.careers/benefits (last visited October 7, 2025).

36. And QLS advertises open positions across all of its facilities and solicits applications for these positions through its website.[3]

37. To meet its business objectives, QLS employs workers, like Riley and the other Hourly Employees, to provide healthcare to its patients.

38. QLS expects all of its employees, across all of its facilities are "expected to understand and follow … the important laws, regulations, ethical standards, policies and procedures" contained in its Code of Conduct.[4]

39. For example, QLS employed Riley as a CNA in its New Castle, Pennsylvania senior care facility from approximately July 2018 until August 2025.

40. Riley's job duties included providing residents with personal care, including showering/bathing, changing clothes, eating, as well as administering medications to residents.

41. Riley regularly worked more than 40 hours a workweek.

42. Indeed, Riley typically worked approximately 8 hours a day and 5 to 6 days a week "on the clock" (40 to 48 hours a workweek).

43. QLS paid Riley approximately $20.40 an hour.

44. Likewise, the other Hourly Employees typically worked approximately 8 hours a day and 5 to 6 days a week "on the clock" (40 to 48 hours a workweek).

45. And Riley and the other Hourly Employees are required to report their "on the clock" hours worked via the timekeeping system QLS selects and controls.

---

[3] https://prd01-hcm01.prd.mykronos.com/ta/6074464.careers?CareersSearch=&lang=en-US (last visited October 7, 2025).

[4] https://irp.cdn-website.com/30f68628/files/uploaded/QLS%20Code-of-Conduct.pdf (October 7, 2025).

46. At the end of each pay period, the Hourly Employees receive wages from QLS that are determined by common systems and methods that QLS selects and controls.

47. But QLS does not pay Riley and the other Hourly Employees at the required premium overtime rates for hours worked in excess of 40 in a workweek.

48. Instead, QLS pays Riley and the other Hourly Employees under its shift differential pay scheme.

49. Specifically, QLS agrees to pay and subsequently pays Riley and the other Hourly Employees shift differentials and other non-discretionary bonuses, including signing bonuses, if they fulfill QLS's criteria.

50. But QLS fails to include these shift differentials and non-discretionary bonuses in Riley's and the other Hourly Employees' regular rates of pay for overtime purposes.

51. Thus, under its shift differential pay scheme, QLS does not pay Riley and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 in a workweek.

52. Additionally, QLS subjects Riley and the other Hourly Employees to its common practice of automatically deducting 30 minutes from their hours and wages each shift for "meal breaks," regardless of whether they actually receive a *bona fide* meal break.

53. Indeed, QLS simply assumes that Riley and the Hourly Employees receive a *bona fide* meal break each workday.

54. But QLS fails to provide or make available *bona fide* meal breaks.

55. Instead, QLS requires Riley and the other Hourly Employees to remain on duty and working throughout their shifts and regularly subjects them to interruptions during their unpaid, so called meal breaks.

56. Indeed, because of these regular work interruptions, Riley and the Hourly Employees are not free to engage in personal activities during unpaid "meal breaks."

57. Rather, during their unpaid "meal breaks," Riley and the Hourly Employees are required to perform their regular patient care job duties and responsibilities.

58. Thus, Riley and the Hourly Employees routinely spend their unpaid "meal breaks" performing their normal job duties for QLS's, not their own, predominant benefit.

59. This unpaid time is compensable under the FLSA and Pennsylvania law because QLS knew, or should have known, that (1) Riley and the Hourly Employees were performing unpaid work during their "meal breaks," (2) they were interrupted with work duties during attempted "meal breaks," (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped "meal breaks" due to work demands, (5) the "meal breaks" were less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their "meal breaks" because of regular interruptions, (7) they remained on QLS's premises, under QLS's supervision during their unpaid "meal breaks"; and/or (8) they spent their unpaid "meal breaks" performing their regular duties for QLS's predominant benefit.

60. In addition to deducting from these employees' wages for so called "meal periods," QLS also subjects Riley and the Hourly Employees to its rounding policy.

61. Specifically, QLS automatically rounds Riley's and the other Hourly Employees' clock in and clock out punches to the nearest quarter hour for QLS's—not the employees'—primary benefit.

62. QLS prohibits Riley and the other Hourly Employees from clocking in for their shifts more than 7 minutes before their scheduled start times and clocking out more than 7 minutes after their scheduled end times.

63. And QLS considers Riley and the other Hourly Employees late and takes disciplinary action or threatens to do so if they clock in even a minute after their scheduled start time and considers them to leave early if they clock out even a minute before their scheduled end time.

64. Likewise, QLS takes disciplinary action or threatens to do so if they clock in more than 7 minutes prior to their scheduled start time or clock out more than 7 minutes after their scheduled end time.

65. QLS further requires and expects Riley and the other Hourly Employees to perform their normal job duties immediately upon clocking in.

66. By enforcing these policies, QLS ensures its rounding policy benefits QLS—and does not benefit Riley and the other Hourly Employees.

67. Thus, under QLS's rounding policy, Riley and the other Hourly Employees are denied wages for all hours worked, and overtime wages for overtime hours worked during workweeks in which they work more than 40 hours.

68. During weeks they work more than 40 hours, QLS does not pay them overtime wages for all overtime hours worked because QLS fails to include time these employees worked "off the clock" during their unpaid "meal periods" and due to its rounding policy.

69. QLS fails to exercise its duty as Riley's and the other Hourly Employees' employer to ensure these employees are not performing work that QLS does not want performed during their unpaid "meal breaks."

70. And QLS knows, should know, or recklessly disregards whether Riley and the other Hourly Employees routinely perform work "off the clock" during their unpaid "meal breaks."

71. Indeed, Riley and other Hourly Employees have complained to their supervisors, HR, and/or QLS management about being forced to work during their unpaid "meal breaks."

72. Thus, QLS required, requested, suffered, or permitted Riley and the other Hourly Employees to work for its predominant benefit during their unpaid "meal breaks."

73. Despite accepting the benefits, QLS does not pay Riley and the other Hourly Employees for the compensable work they perform during their automatically deducted "meal breaks."

74. As a result, under QLS's auto-deduction policy, rounding policy, and shift differential pay scheme, Riley and the other Hourly Employees are denied earned wages for all hours worked, including overtime wages for overtime hours worked.

## Class And Collective Action Allegations

75. Riley brings her Pennsylvania state law claims as a class action pursuant to FED. R. CIV. P. 23 and brings her FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b).

76. Like Riley, the other Hourly Employees are uniformly victimized by QLS's shift differential pay scheme, rounding policy, and/or auto-deduction policy.

77. Other Hourly Employees worked with Riley and indicated they were paid in the same or similar manner, performed similar work, and were subject to QLS's same or similar shift differential pay scheme, rounding policy, and/or auto-deduction policy.

78. Based on her experiences with QLS, Riley is aware QLS's shift differential pay scheme, rounding policy, and auto-deduction policy were imposed on other Hourly Employees.

79. The Hourly Employees are similarly situated in the most relevant respects.

80. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

81. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

82. Rather, the Hourly Employees are held together by QLS's shift differential pay scheme, rounding policy, and auto-deduction policy, which systematically deprive them of wages, including overtime wages.

83. QLS's records reflect the number of hours the Hourly Employees recorded working "on the clock" each workweek

84. QLS's records further reflect that it automatically deducted 30 minutes a workday for so called "meal breaks."

85. QLS's records show it automatically rounded the Hourly Employees' punch in and punch out times to the nearest quarter hour for its own benefit and to the detriment of the Hourly Employees.

86. QLS's records also show it paid Riley and the other Hourly Employees shift differentials and other non-discretionary bonuses it excluded from their regular rates of pay for overtime purposes.

87. The back wages owed to Riley and the other Hourly Employees can be calculated using same formula applied to the same records.

88. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to QLS's records, and there is no detraction from the common nucleus of liability facts.

89. Therefore, the issue of damages does not preclude class or collective treatment.

90. Riley's experiences are typical of the other Hourly Employees.

91. Riley has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

92. Riley has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Pennsylvania law.

93. Riley and her counsel will fairly and adequately protect the interests of the Hourly Employees.

94. Riley retained counsel with significant experience in handling complex class and collective action litigation.

95. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and QLS will reap the unjust benefits of violating the FLSA and Pennsylvania law.

96. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

97. Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and QLS.

98. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

99. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

100. Among the common questions of law and fact are:

a. Whether QLS paid the Hourly Employees shift differentials and non-discretionary bonuses;

b. Whether QLS excluded shift differentials and non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay for overtime purposes;

c. Whether QLS automatically deducted 30 minutes from the Hourly Employees' hours for "meal breaks" that were not *bona fide*, continuous, and uninterrupted;

d. Whether QLS's auto-deduction policy deprived the Hourly Employees of wages for time worked during meal breaks that were not *bona fide*, continuous, and uninterrupted;

e. Whether QLS automatically rounded the Hourly Employees' punch in and out times for its own primary benefit;

f. Whether QLS's decision not to pay the Hourly Employees earned wages, including overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked was made in good faith;

g. Whether QLS failed to pay the Hourly Employees earned wages for all their hours worked, in violation of the WPCL and whether this was the result of a bona fide dispute; and

h. Whether QLS's violations of the FLSA and Pennsylvania law were willful.

101. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

102. The Hourly Employees are known to QLS, are readily identifiable, and can be located through QLS's business and personnel records.

## QLS's Violations Were Willful, Unreasonable, and Not the Result of a Bona Fide Dispute

103. QLS knew it employed Riley and the other Hourly Employees.

104. QLS knew it was subject to the FLSA's and PMWA's overtime provisions.

105. QLS knew the FLSA and PMWA required it to pay non-exempt employees, including the Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

106. QLS knew it was subject to the WPCL.

107. QLS knew the WPCL required it to pay employees, including its Hourly Employees, all earned wages (including overtime) on their regular paydays and following the termination of employment.

108. QLS knew Riley and the other Hourly Employees were non-exempt employees entitled to overtime pay.

109. QLS knew Riley and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because it recorded these employees' "on the clock" hours via its timekeeping system.

110. QLS knew it was required to include the shift differentials and non-discretionary bonuses it paid the Hourly Employees in their regular rates of pay for overtime purposes.

111. QLS nonetheless knew it excluded this compensation from the Hourly Employees' regular rates of pay for overtime purposes.

112. QLS knew it automatically rounded the Hourly Employees' punch in and punch out times to the nearest quarter hour for its own primary benefit and to the detriment of the Hourly Employees.

113. QLS knew it failed to provide or make available *bona fide*, uninterrupted meal breaks to Riley and the other Hourly Employees.

114. QLS knew Riley and the other Hourly Employees did not actually receive *bona fide*, uninterrupted meal breaks.

115. QLS knew it required, requested, suffered, or permitted Riley and the other Hourly Employees to work for its predominant benefit during their unpaid "meal breaks."

116. QLS knew that, as Riley's and the other Hourly Employees' employer, it had a duty to ensure they were not performing work "off the clock" (without pay) that QLS did not want performed.

117. QLS knew Riley and the other Hourly Employees regularly worked "off the clock" during their "meal breaks" performing their regular job duties for QLS's predominant benefit.

118. QLS's decision to automatically deduct at least 30 minutes a workday from Riley's and the other Hourly Employees' hours for "meal breaks" was neither reasonable, nor was it made in good faith.

119. QLS's failure to pay its Hourly Employees earned wages for all hours worked on regular paydays and following the termination of their employment was unreasonable.

120. QLS's failure to pay its Hourly Employees their earned wages was not the result of a *bona fide* dispute.

121. QLS knowingly, wilfully, and/or in reckless disregard carried out its unlawful shift differential pay scheme and auto-deduction policy that deprived Riley and the other Hourly Employees of earned wages, including overtime wages at the required rate of pay—based on all remuneration—for all overtime hours, in violation of the FLSA, PMWA, and WPCL.

122. QLS knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA and Pennsylvania law.

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

123. Riley brings her FLSA claim as a collective action on behalf of herself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

124. QLS violated, and is violating, the FLSA by employing non-exempt employees such as Riley and the other FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

125. QLS's unlawful conduct harmed Riley and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

126. Accordingly, QLS owes Riley and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

127. Because QLS knew or showed reckless disregard for whether its shift differential pay scheme, rounding policy, and auto-deduction policy violated the FLSA, QLS owes Riley and the other FLSA Collective Members these wages for at least the past 3 years.

128. QLS is also liable to Riley and the other FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

129. Finally, Riley and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
## FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
## (PENNSYLVANIA CLASS)

130. Riley brings her PMWA claim as a class action on behalf of herself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

131. The conduct alleged violates the PMWA (43 PA. STAT. §§ 333.101, *et seq.*)

132. At all relevant times, QLS was subject to the PMWA because QLS was (and is) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

133. At all relevant times, QLS employed Riley and each of the other Pennsylvania Class Members as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

134. The PMWA requires employers, like QLS, to pay non-exempt employees, including Riley and the other Pennsylvania Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

135. QLS violated, and is violating, the PMWA by employing non-exempt employees (Riley and the other Pennsylvania Class Members) for workweeks in excess of 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

136. QLS's unlawful conduct harmed Riley and the other Pennsylvania Class Members by depriving them of the overtime wages they are owed.

137. Accordingly, QLS owes Riley and the other Pennsylvania Class Members the difference between the wages actually paid and the overtime wages actually earned, plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

138. Finally, Riley and the other Pennsylvania Class Members are entitled to recover their reasonable attorneys' fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

**COUNT III**
**FAILURE TO PAY ALL WAGES EARNED UNDER THE WPCL**
**(WPCL CLASS)**

139. Riley brings her WPCL claims as a class action on behalf of herself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

140. QLS's conduct violates the WPCL. 43 PA. STAT. §§ 260.1, *et seq*.

141. At all relevant times, QLS was subject to the WPCL because QLS was (and is) an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

142. At all relevant times, QLS employed Riley and each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

143. The WPCL requires employers, like QLS, to pay employees, including Riley and the other Pennsylvania Class Members, all wages (including overtime) earned, due, and owing to them on

their regular payday(s) and following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

144. QLS violated, and is violating, the WPCL by depriving the Pennsylvania Class Members of all wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

145. Riley's and the other Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

146. QLS's unlawful conduct harmed Riley and the other Pennsylvania Class Members by depriving them of the earned wages they are owed.

147. QLS's failure to pay Riley and the other Pennsylvania Class Members all their earned wages was not the result of a *bona fide* dispute.

148. Rather, QLS knowingly failed to pay earned wages to Riley and the other Pennsylvania Class Members.

149. Accordingly, QLS owes Riley and the other Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

150. QLS also owes Riley and the other Pennsylvania Class Members liquidated damages in an amount equal to 25% of the total amount of wages due, or $500, whichever is greater. *See* 43 PA. STAT. § 260.9a.

151. Finally, Riley and the other Hourly Employees are entitled to recover their attorney's fees and costs. See 43 PA. STAT. § 260.9a(f).

**JURY DEMAND**

152. Riley demands a trial by jury on all Counts.

**RELIEF SOUGHT**

Riley, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Riley and her counsel to represent the interests of the Hourly Employees;

d. An Order finding QLS liable to Riley and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus an equal amount as liquidated damages;

e. An Order finding QLS liable to Riley and the other Hourly Employees for unpaid overtime wages owed under the PMWA plus all available penalty wages;

f. An Order finding QLS liable to Riley and the other Hourly Employees for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to the greater of 25% of their unpaid wages or $500;

g. A Judgment against Quality awarding Riley and the other Hourly Employees all their unpaid overtime wages, liquidated damages, treble damages, and any other penalties available under the FLSA, PMWA, and/or WPCL;

h. An Order awarding attorney's fees, costs, and expenses;

i. Pre- and post-judgment interest at the highest applicable rates; and

j. Such other and further relief as may be necessary and appropriate.

Dated: October 8, 2025

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/ Andrew W. Dunlap*
Michael A. Josephson
PA ID No. 308410
Andrew W. Dunlap
TX Bar No. 24078444
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Joshua P. Geist, Esquire
PA ID No. 85745
William F. Goodrich, Esquire
PA ID No. 30235
**GOODRICH & GEIST, PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

William C. (Clif) Alexander
Austin W. Anderson
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
clif@a2xlaw.com
austin@a2xlaw.com

**ATTORNEYS FOR RILEY AND THE HOURLY EMPLOYEES**